RECEIVED

FEB 2 9 2016

U.S. District Court
Eastern District of MO

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| **DARRIE WALTON,** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| **vs** ) | **Cause No:**_____ |
| ) | |
| **Hathaway Village Partners, LLC** ) | |
| **Anita Chimento** ) | |
| **Mary Hawkins** ) | |
| **Valerie Davis** ) | |
| **Anthony Irving** ) | |
| ) | |
| **Et Al** ) | |
| ) | |
| **Defendants** ) | |

## PLAINTIFF PETITION /MOTION TO COURT FOR
## JUDICIAL REVIEW OF A MISSOURI COMMISSION
## ON HUMAN RIGHTS and HUD DECISION DATED DECEMBER 1, 2015

COMES NOW Plaintiff, Darrie Walton, and states as follows her cause of
action against the above stated Defendants employed by the Limited Liability
Corporation named Hathaway Village Partners, LLC specifically from 2009 through
2015; and the Corporation, Hathaway Village Partners, LLC.  Plaintiff has been a resident
at Hathaway Village Apartments since approximately April 2002.

Plaintiff is disabled, low income and is disadvantaged in brief and
litigation process and procedures, but nevertheless is filing this claim.  Defendants are
millionaires with a corporate lawyer.  Plaintiff petitions the court to grant her DUE
PROCESS of law as a PRO SE, regarding her rights in the processing of this complaint.
Plaintiff is entitled to Subpoena, Interrogatories, Discovery [ records stating reason for
Refinancing, telephonic/written tenant work order requests, maintenance work order logs,

\

employee/tenant address and telephone numbers, 2014 fire report, Insurance determination and money disbursed for each affected unit, all emails, correspondence, court filings/litigations/complaints/settlement brought by or against Defendants, etc], in her claims against these defendants and to present witnesses [plaintiff's daughter cosigner on lease] supportive and hostile to the cause.  All administrative remedies have been exhausted to Plaintiff's knowledge in her efforts to resolve these causes/claims. Defendants refused to repair their property timely, or at all, but continually cash Plaintiff's timely issued rent checks without delay. Defendants have left Plaintiff no choice but to proceed in a court of law in order to obtain RELIEF. Plaintiff's right to file in Federal, Circuit/District Court is defined in **[EXHIBIT A]**, HUD **[case # 07-15-0490-8]** and MCHR **[case #H-07/15-4208]** Decisions dated December 1, 2015. Failure to file, puts plaintiff in a forever barred position to discuss these issues ever again. The process of resolution has caused Plaintiff to have to file at a court level.  The below listed counts are the basis of Plaintiffs lawsuit for which Plaintiff is petitioning the court for a jury trial, judicial review, relief [compensatory and punitive] and any other form of relief the court deems just and proper.

## FACTS COMMON TO ALL ALLEGATIONS

1. Plaintiff is a certified disabled Citizen of the United States of America, and a resident of the state of Missouri.

2. Plaintiff is filing this compliant in the United States District Court, Eastern District of Missouri Eastern Division [per HUD] and Circuit Court of Cole County [per MCHR] service on Defendants will be invoked through the Sheriff's Department to the Place of last known employment of all individuals above listed [Hathaway Village Apartments]

3. Venue is properly before this court in accordance to the Decision issued by the Housing and Urban Development HUD with the Missouri Commission on Human Rights. **[PLAINTIFF EXHIBIT A]**

4. Plaintiff is an African American single female, 59 years old, who has resided at 11490 LaTonka Trail, Apartment D since 2002.

5. Plaintiff's primary apartment issues were manageable until 2009 [**EXHIBIT B**]. Plaintiff experienced a major water catastrophe created by upstairs neighbors.  REPORTING MAJOR ISSUES LEADS TO RETALIATORY TREATMENT.  HARASSMENT AND DISCRIMINATION.

6. PLAINTIFF HAS PERSISTED TO HAVE REPAIRS PERFORMED IN THE APARTMENT SINCE 2009 [not since a December 2014 fire as indicated by Defendants in HUD/MCHR report].

7. Plaintiff has requested repairs to her apartment due to this damage and other repairs, which were not timely, never responded to and still not completed despite her reporting these issues to the MCHR and HUD.

8. Defendants are insensitive, regularly violating Plaintiff's rights to administrate her medical needs as they were occurring with her, then harassed Plaintiff by stating she denied them access to her apartment.  Defendants had a key and accessed Plaintiff's apartment at will [with/without work orders].

9. Defendants have intentionally defamed Plaintiff's character with slander and libel in their statements to investigator Williams by stating Plaintiff had boxes stacked from floor to ceiling and boxes at every door blocking access.

10. In 2013 Plaintiff suffered three major injuries at a job she worked.  One specific injury, which contributes to Plaintiff's disabling condition is that a child made a running leap and jumped on Plaintiff.  This tackle caused Plaintiff to fall on the hard surface of the outside ground injuring her back.  Plaintiff is in constant pain and suffers from further deterioration of back.

11. **Plaintiff is a 59 year old female with numerous medical conditions.  In 2014 Plaintiff was diagnosed with degeneration of spine, she is unable to pick up boxes, stack boxes from floor to ceiling. Defendants statements to investigator or conspired and collaborated to preclude an adverse decision by MCHR and HUD.**

**12.** Defendant Valerie Davis called Plaintiff a hoarder.  **Hathaway Village witness Anthony Irving stated he saw Ms. Walton every morning taking out her trash.  He assisted her with this process** [this portion of Defendants statement will be addressed in COUNT IV of this Cause].  **Hoarders do not take trash out, they keep it, and especially would not be taking trash out on a daily basis.  Plaintiff took trash out daily [Plaintiff tried to file initial complaint against the Preservation Inspector's report who stated Plaintiff had trash, litter, garbage, etc], but she didn't get a response from MCHR].  Plaintiff is not a hoarder. The statement and inference is libelous and slanderous and is intended to defame and harass.**

13. In 2013 Plaintiff set up a long table beside her bed [photographed by Inspectors].  She had stacked her clothes on it, because, bending, reaching and moving had become painful.   Plaintiff made these processes easy by having everything she needed at bed level.  Plaintiff's daughter bought the storage bins, folded clothes and neatly placed them in storage containers; then stacked them one then two on top of each other, but not from floor to ceiling. They were on the table.  This was a needed accommodation for Plaintiff.  In December 2014, Plaintiff dumped everything out of containers trying to find clothes to take with her to Springfield.  Clothes/shoes were dumped and this created the messy house condition, not trash, litter, or garbage.

14. Several Tenants [Eloise Coleman {double hip replacement and renal failure) and Julia Walton {congestive heart failure and corrective vision repair] spoke directly to Plaintiff about falling on the Property and suffering injury requiring legal actions against Defendants [Hathaway Village Apts] for their failure to maintain outside property conditions [as well]; which created safety issues and medical care for them.

15. Defendants [specifically Valerie Davis] participated in Reprisal actions towards Plaintiff for exercising her right to demand her property rental unit be repaired with professionalism [Plaintiff called HUD and Housing Authority on

4

this Defendant in 2013].  She informed Plaintiff on a voice mail message that her lease would not be renewed for the upcoming year.  At the same time she said she would fix plaintiff's apartment to her liking, but did not do so.

16. Plaintiff provided information to the MCHR and HUD regarding the discrimination, and disparate treatment she was subjected to as a tenant at Hathaway Village Apartments.

17. **The photos taken by Preservation were taken prior to January 15th , 2015. The apartment met inspection.  The statement in the case file is incorrect. It states the pictures were taken January 27, 2015.  Plaintiff is correcting the record the investigator did not correctly hear.  Defendant Valerie Davis supports Plaintiff's statement.  Ms Davis states to investigator on August 5th 2015..  "Owners refinanced the Complex during April 2015 and that there were not any safety issues noted at Complainant's Unit. The Fannie Mae loan required all safety issues to be corrected before the refinancing was approved".  [PLAINTIFF EXHIBIT C]**

18. Defendants actions and omissions have affected Plaintiff's ability to reside at this complex with dignity and respect and without constant harassment letters informing her to leave. using a one time incident to harass Plaintiff accusing her of having boxes stacked from floor to ceiling and being denied access to the unit. Defendant's actions cause mental anguish, depression, and anxiety.

19. Plaintiff timely filed her complaints with the MCHR and HUD.  The investigative file contains 343 pages. The file did not contain pictures from the Preservation Inspector's January 5, 2015 unannounced visit.

20. Plaintiff's complaints as filed with the MCHR and HUD assert both discrimination [disability, retaliation, harassment] and nondiscrimination [monetary demands for late fees, administrative charge in the sewer/water bill assessed to tenants] claims based on plaintiff's actions informing defendants of their responsibility to repair, replace, or maintain their property rented by

plaintiff [from 2002-2016 Plaintiff has paid an estimated $84,000 plus, to this complex].

21. All plaintiff's procedural and substantive complaints raised before MCHR and HUD are timely preserved and are now properly before this court.

22. Plaintiff is filing her initial lawsuit before this court in February 2016.

## COUNT I- FAILURE TO REPAIR, REPLACE OR MAINTAIN PLAINTIFF'S APARTMENT IN TIMELY OR ORDERLY MANNER

COMES NOW Plaintiff, stating as follows, Count I of her Complaint against Defendants

23. Plaintiff hereby incorporates by reference, as if fully set out herein, the allegations asserted in Paragraphs 1- 22.

24. In 2009 and 2010 plaintiff incurred ceiling damage due to excessive water leaking from the upstairs Apartment into second bedroom, bathroom, hall. Integrity of the ceiling drywall was never inspected. Defendants were non responsive to Plaintiff. MCHR investigator informed Defendants to correct this issue in 2015. Defendants response was to paint over this water damage drywall [in the second bedroom] on February 12, 2016 [without inspecting drywall for mold or stability].

25. The water damage to bathroom caused Plaintiff to have to rent a hotel room for her and her daughter and pay for meals while maintenance supposedly replaced ceiling drywall [the ceiling above the toilet was left open]. It was painted, but sloppily done [paint drippings on floor, toilet Plaintiff's personal towels and bar fixture to hang towels on]. Plaintiff covered bar with aluminum foil in order to use it.

26. There was mold growing on the bathtub caulk area. Plaintiff requested correction of this issue for months. Notating the problem on her daily rent checks. It was not until Plaintiff sent letter to Corporate did she finally get an

adequate response.  This was approximately 2011/2012 a tub surround was put over the existing wall [there was no inspection of the integrity of the drywall or cause of the mold].  The old tiles were not removed for inspection.

27. Plaintiff has requested that the bathtub area where this surround was placed be re caulked.  It continually separates.  In Plaintiff's layman knowledge this is indication there is a wall water leak, which causes this ongoing caulk separation.  Respondents have failed to re caulk the bathtub or inspect for water leak in the wall.  MCHR Investigator, informed them to re caulk in 2015. As of to date the re caulking has not occurred.

28. Plaintiff requested that the bathroom toilet bolts be covered since 2009.  As of to date they have not covered their rusting bolts.

29. Plaintiff requested that the holes in the windows be sealed so that spiders and bugs would cease to crawl through.  Since the date the complex installed the new thermal windows [2012 ??] Defendants have ignored Plaintiff's requests.  MCHR investigator informed them to correct this issue in 2015.  The holes were filled in 2015 after MCHR, investigator's instruction to Defendants [again the work was sloppily done].

30. Plaintiff requests that the doors on her closet be repaired in the master bedroom since approximately 2012 and especially after fire.  The knobs had been bent [someone forced closet doors open incorrectly 2014 fire] and black smudge from whomever entered the master bedroom 2014 fire..  The doors have been off track for years [because there is no bottom track to stay in or guide the doors].  Defendants have replaced doorknobs [February 12, 2016].  The doors were painted February 16, 2016.  The closet doors remain off track [new Property Manager says Plaintiff has to move all clothes out of closet] [and TV and TV stand which sits adjacent to closet has to be moved]. Plaintiff cannot do either of these task requiring use of back or strength in standing or moving heavy objects.  Accommodation is required.

7

31. Plaintiff requested that her Patio boards be repaired since 2009. There are holes which makes it unsafe for walking and Plaintiff's rent has increased based on their supposedly enhancing the outside of this building. MCHR investigator informed Defendants to repair the boards in 2015. As of today's date they have not been repaired [and there are NO items on Plaintiff's balcony]

32. Plaintiff requests that the outside light fixture on the Patio be repaired since 2009. The light fixture was broken and the socket with the bulb in it did not work. MCHR investigator informed Defendants that this should be corrected 2015. Defendants replaced and repaired Patio light fixture 2015. [There was never anything on the balcony, to preclude Defendants correcting from correcting this condition of their property].

33. Plaintiff requests that the inside wall of the apartment on Patio side be painted, since 2014 fire. MCHR investigator agreed wall needed painting in 2015. The painter came in on February 12, 2016 and painted the wall over Plaintiff's Piano [which was never requested because this furniture Defendants complain about she cannot move]. The painter knocked over Plaintiff's flower vases pictures and plaques she had on Piano. They were left on the floor. Plaintiff called new property Mgr Rivera who stated she and Plaintiff had a miscommunication, and the wrong wall was painted. The painting of the correct wall was completed on February 16, 2016.

34. Plaintiff requested that the molded cabinets, sink basin and nonworking dishwasher be replaced in kitchen. When MCHR investigator came to review the situation she saw a replaced sink basin. It did not match any cabinets and the kitchen looks a mess with mixed matched cabinets. A dirty old dishwasher was installed in Plaintiff's unit and the old non-working one discarded. During the replacement maintenance made a hole in the floor and failed to repair it. During the installation of sink basin maintenance tore a hole in the wall and failed to repair it [their remedy was to paint over it].

35. Plaintiff requested new kitchen cabinets since the makeshift job created the disaster stated in number 32 above. On February 12, 2016 the new property manager Rivera informed Plaintiff that she is ordering new cabinets for the kitchen rather then resurface. On February 15, 2016 she further informed Plaintiff that it takes two weeks for the new cabinets to be made, after they are made she will let Plaintiff know and schedule an installation date. This kitchen cabinets/countertops issue has been on-going for years and is not resolved.

**36.** Defendant [Davis] suggested resurfacing of kitchen counter tops rather than installing new cabinets. As of to date the resurfacing has been postponed by new property manager [Rivera]. **Prior Property Mgr Hawkins stated to Plaintiff, she can only do what Ms. Davis and Corporate management allow her to do.**

37. After fire of 2014 the restoration people made assessment of where fire damage had come into Plaintiff's apartment. They tore down the ceiling wood trim, leaving apartment open to outside wall of building. Plaintiff had cold air from outside blowing into her apt. Plaintiff had to have Plastic put up to stop the cold air-flow which was affecting Plaintiff's health from December 2014 until approximately May 20, 2015. Plaintiff is sickly. Defendants did not timely correct the fire issues in Plaintiff's unit [they never came back to paint or put up wood ceiling trim] until Plaintiff complained, write letters, and finally contacted MCHR before Defendant's would respond.

38. Defendants had taken up the hall and dining room carpet. However, in doing so they needed to readjust the wood trim from end of wall to floor to bridge the gap left by carpet pile. By not doing so everyone's apartment was subjected to large spiders and an assortment of many different bugs. Neighbors asked me about this issue. I told them to complaint to Mgt. I did complain [I believe it was 2010 carpet removed] and never got a response until MCHR investigator informed Defendants [2015] that they had to seal the

openings that allowed bugs to come into the apartment.  They complied after
MCHR Investigator informed them this should be corrected.

39. Defendants replaced the light fixtures [approximately 2012/13] for all
apartments.   They gave Plaintiff a broken kitchen light fixture and still have
not replaced it.  MCHR investigator did notate this disparate situation in her
analysis.  The broken kitchen light fixture has not been replaced as of to date.

40. The bathroom floor tile had separated from the tub.  Plaintiff had requested
this be sealed and caulked like the bathtub needed caulking since 2013.
MCHR investigator informed Defendants this situation needed rectifying in
2015.  In 2015 they finally resealed tile floor.

41. Defendants informed Plaintiff they needed to get to wall sockets.  Plaintiff
moved chairs that were within her capability.  Plaintiff is a certified disabled
female with spinal degeneration, osteo-arthritis, carpal tunnel syndrome,
multiple sclerosis, MVP and neuropathy [diabetic], etc .  Plaintiff is a unable
to move things she use to move or adequately care for herself [house cleaning,
cooking, chores].  Plaintiff cannot move heavy furniture sitting in these
positions since her occupation of this apartment in 2002.   Defendants
statements are inflammatory and meant to demean, and disparage Plaintiff.
They are in violation of the ADA.  Accommodation is required.

42. Plaintiff complained to Defendants about the excessive trash in the back area
of the complex where she resides.  As of to date that trash has not been
cleaned up.  Plaintiff pointed this trashed area to MCHR investigator
**[PLAINTIFF EXHIBIT D]**.

43. The bathroom light, sink basin, and toilet fixtures are old.  Corrosion and rust
has occurred.  Plaintiff ask that Defendants to correct this situation since 2009.
As of to date they have not.

44. The bathroom baseboards have damage and holes in them prior to Plaintiff's
occupation, it was time for owners to fix this damage.  MCHR investigator
informed Defendants that they needed to correct this situation.  They did, but

not professionally. <u>There are still holes, just new holes.</u> These holes in flooring and walls have been created by their maintenance personnel.

45. Maintenance Technician Anthony Irving illegally entered Plaintiff's Apartment. The St. Louis County Police Department was called by Plaintiff. Plaintiff was not dressed and had made no maintenance request for that day. Defendants had not made any maintenance notifications to Plaintiff that they were going to access the apartment. St. Louis County Police state they do not get involved in Landlord tenant disputes. <u>Defendants are not denied access, they have keys to the Apartment and enter at will as did Mr. Irving [2011].</u>

46. Defendants are in violation of Sections 804b and/or 804f of Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Act of 1988.

## <u>COUNT II- DEFENDANTS FAIL TO NOTIFY PLAINTIFF OF FIRE IN A TIMELY AND URGENT MANNER LEADING TO GROSS NEGLIGENCE BY DEFENDANTS IN THEIR LEGAL OBLIGATION TO PLAINTIFF</u>

COMES NOW Plaintiff, stating as follows, Count II of her Complaint against Defendants

47. Plaintiff hereby incorporates by reference, as if fully set out herein, the allegations asserted in Paragraphs 1-46

48. Plaintiff has resided at 11490 Latonka Trail since approximately April 2002. Plaintiff has never had any citations issued to her by property management or any other community service organization except on January 5, 2015. [the complex fire was December 24 or 25th 2014].

49. Plaintiff had no citations on her door or inside the apartment upon arrival December 28, 2014 back to the Apt at 11490.Latonka Trail Apt D address [Plaintiff and daughter returned on this day].

50. No one from the Hathaway Village Apartment Property Management or Corporate Office contacted Plaintiff or Plaintiff's daughter [who is on the

11

lease with a current cell phone number] to notify them that a fire had occurred
and that the address at 11490 Latonka Trail Apt D was affected.

51. Plaintiff was not notified that she needed to return home to pick up items left
in the apartment before January 5, 2015, to preclude Plaintiff from getting a
citation. Plaintiff was denied benefit of the grace period extended to complex.

52. Proper notification to Plaintiff would have allowed Plaintiff's daughter to
employ help for her mother immediately upon their return home December
28, 2014. Management wanted Plaintiff to be cited. Plaintiff did not know
she had from December 24 or 25th, 2014, to January 5, 2015 [GRACE
PERIOD GRANTED BY FIRE INSPECTORS] to pick up the clothes, shoes,
toys, she had left on the floor and had pulled out of the containers they had
been stored in. Defendant's failure to properly inform Plaintiff or Plaintiff's
daughter, of the inspectors notice caused her to be cited. This is GROSS
NEGLIGENCE BY PROPERTY MANAGERS [DAVIS] [Davis is the
Property Manager who responded to the Fire issues] AND CORPORATE.

53. Plaintiff never would have been cited if property managers had appropriately
informed her she had from her return December 28, 2014 to January 4, 2015
to get all items put back in closet and containers or that some items needed to
be removed from the apartment. MANAGEMENT NEVER TIMELY,
APPROPRIATELY INFORMED OR SHOWED PLAINTIFF ANY
CITATION FROM FIRE DEPARTMENT TO INFORM PLAINTIFF WHAT
SPECIFIC ITEMS NEEDED TO BE REMOVED. Plaintiff did send
management a letter because just telling her she had caused a violation
without showing her what had been issued "was harassment", since Plaintiff
has just received notice from MS. Hawkins, informing her she would be fined
$1,000 if she didn't remove one mountain bike from her balcony.
PLAINTIFF HAS NEVER STORED ANYTHING ON THE BALCONY,
SHE HAD ONLY ONE MOUNTAIN BIKE SINCE 2002 ON THE

BALCONY.  DEFENDANTS LIE AND EXAGGERATE ISSUES TO
DEFAME, DISPARAGE AND HARASS PLAINTIFF

## COUNT III- DEFENDANTS VIOLATED THE AMERICANS WITH
## DISABILITY ACT CODIFIED AT 43 U.S.C. s12101 ET, SEQ

COMES NOW Plaintiff, stating as follows, Count III of her Complaint against
Defendants

54. Plaintiff hereby incorporates by reference, as if fully set out herein, the
allegations asserted in Paragraphs 1-53

55. Plaintiff has displayed her blue handicap decal whenever she has parked on
the lot at Hathaway Village Apartment since April 2002..

56. Plaintiff has informed ALL Hathaway Village Property Managers that she is
disabled.  At one time Plaintiff received Section VIII rent payment subsidies
from the Housing Authority which were paid to this Apartment management..
The records are on file.

57. Defendants installed a handicap parking sign in approximately 2012.  At this
time only two known handicap people with blue decals resided at 11490
LaTonka trail.  That was Eloise Coleman and Darrie Walton.  When Ms.
Coleman had to have hip replacement surgery due to a fall, she was moved to
a lower level apartment in another building where she now resides.
**Defendants took the handicap parking space sign down.**  Defendants
accommodated Ms. Coleman but not Plaintiff.  The signage was put on
Maridosa where Ms Coleman was moved to.

**58.** Plaintiff requested Handicap Parking space sign be put back up.  **Property
Mgr Davis refused.  Property Mgr Hawkins stated she could only do what
the property owners and Ms Davis allowed her to do.**  The handicap sign
was not replaced until MCHR was contacted and Plaintiff informed Property
management that she had filed a complaint against them.  This is BLATANT
violation of the law.  Refusal to accommodate or respond to a request for

13

accommodation.  Defendants statements to investigators that someone else removed sign is not true.  Defendants statement they replaced sign upon getting copy of Plaintiff's Blue decal is not true.  Plaintiff has had a handicap notification on file since 2002. In 2011/2012, Defendants installed a bathtub grab bar [after Plaintiff's daughter nearly fell getting into bathtub] and PLAINTIFF insisted, due to her handicap and the slick resurfaced bathtub [which requires resurfacing again.  It was not properly resurfaced from the onset and requires resurfacing now].

59. Defendants statements in the case file [which has 343 pages] is pretextual to preclude being flagrantly found guilty of violations of the ADA  and the law. [Defendants claim to be oblivious that Plaintiff is handicapped.  Anthony Irving in an attempt to defame and disqualify Plaintiff's handicap condition, states he sees Plaintiff walking up and down the steps every day.  So do the rest of these handicap people who have walkers, canes, and people assisting them.  Plaintiff uses the railing] [Anthony Irving installed the handicap bar grab [approximately 2011/12] Plaintiff requested this when he had to correct the mold situation that existed in bathtub due to water leaks not being responded to in a timely manner by property manager Davis].

60. The location at 11490 LaTonka Trail did not have steps when Plaintiff moved into the complex in 2002.  There were about 3 stone type steps with a long walking pathway which ran along the front of the apartments..  This redesign as it is now has been a problem for Plaintiff and she has requested that the railing extend to the second set of steps and border the lower edge.  Eloise Coleman has fallen on these steps and seriously hurt herself resulting in legal procedures against Hathaway Village.  Julia Walton fell and seriously hurt herself resulting in legal procedures against Hathaway Village.   Darrie Walton has fallen due to the incline of these steps [Plaintiff did not sue Hathaway Village, she asked them to pre salt these steps and salt the first level where the Apartments are and has requested the railing be extended to the second level

14

of steps for all tenants].  Handicap accommodations are not timely responded to for Plaintiff.

61. Due to the number of injuries and the number of handicap persons NOW residing in this building at 11490 LaTonka Trail Plaintiff requests that the old design which had no steep steps be reinstalled.

62. Defendants statements in the case file [which has 343 pages] is pre-textual to preclude being found flagrantly guilty of violations of the law and ADA. [Defendants claim to be oblivious that Plaintiff was handicapped. Property Manager Davis implies that they are careful whom they put in the apartment above Plaintiff.  This statement is not true.  Currently Defendant have moved tenants above Plaintiff with children.  There is the constant running, jumping, pulling toys, and noisy play all day and even late evening after 11:00 pm.  The children rise early and this goes on from 7:00 am until they finally leave. There is the constant knocking down of chairs, tables, toys, and sometimes sounds like a bowling alley above Plaintiff.  Ms. Davis, nor her daughter Toni [leasing consultant 2014/2015] would respond to plaintiff's request for this family to be relocated.

63. Defendants statements in the case file [which has 343 pages] is pre-textual to preclude being found flagrantly guilty of violations of the code and ADA Act. [Defendants complain about **being denied access** to the apartment.  This is a blatant lie. Plaintiff is sickly.  You have to let Plaintiff know when you want to come.  What approximate time. You must allow Plaintiff time to take care of her extensive medical regiments.  Plaintiff has to be able to get up.  Plaintiff has  severe insomnia [one of reasons for disability award of 2001].  Plaintiff has to shower/bathe and get dressed.  These apartments are not designed where a stranger can be working in one room and you can safely do the above processes privately.  The Defendants are not accommodating of Plaintiff's many medical maladies and choose to harass her by stating Plaintiff denied them access to the apartment.  Plaintiff requested Apartment repairs and

constantly asked/wrote WHEN DO YOU PLAN TO COMPLETE OR START
WORK ON PLAINTIFF'S REQUESTED MAINTENANCE REPAIRS].

64. Defendants statements in the case file [which has 343 pages] is pre-textual to
preclude being found flagrantly guilty of violations of the code and ADA Act.
[Defendants state Plaintiff had stacks of boxes against any/all doors/walls they
needed access to in order to perform work orders.  These are blatant lies and
conspired by management to further defame Plaintiff's name and exploit her
handicap conditions.  Plaintiff maintains NO boxes or containers in her
kitchen.  There was always free access.  Just let Plaintiff know what date and
time.  Defendants never informed Plaintiff of dates and times to perform work
orders until MCHR complaint was filed.  Plaintiff had one mop bucket in her
bathroom with one mop in it.  Anthony complains he could not get to furnace
because of boxes and containers.  This is a blatant lie.  Plaintiff would have
moved the mop and bucket without hesitancy.  Defendants could have
accommodated Plaintiff by moving this small item.  Defendants created issues
that were not obstacles in order to harass Plaintiff.  Defendants are in violation
of the law and ADA.

65. Defendants statements in the case file [which has 343 pages] are pre-textual to
preclude being found flagrantly guilty of violations of the code and ADA Act.
[Defendants state Plaintiff had kitchen and bathroom sinks/tubs full of back
standing water.  Creating hoarding and mold issues.  This is a blatant lie.  Due
to Plaintiff's medical necessities her bathroom and kitchen have always been
usable. Plaintiff has diabetes.  Plaintiff must cook and eat, therefore a working
stove, sink and refrigerator are necessities.  Plaintiff keeps these items
functioning at all times.  Plaintiff has had surgery and thus must frequently
empty bladder.  Plaintiff always keeps her bathroom toilet, tub and sink
functioning, at all times.   There was a sink clog [minor in nature] that
Plaintiff requested a work order for Anthony Irving to unclog.  Mr Irving
created a mess by not putting paper in the cabinet base to let water from where

16

he disconnected plumbing drain while he did his repair work.  He left the drain sludge in Plaintiff's bathroom sink basin and water soaked all her toilet paper, and other bathroom items stored under the sink, making certain items unusable.  Property manager Davis was suppose to replace the twelve-roll pack of toilet paper, but never did.

66. Plaintiff's reasons for rescheduling projects are plausible and do establish a causal relationship to her medical situation vs Defendant's need to access [when they have not scheduled work orders with dates and times]. Defendants Davis, Irving, and Chimento have been unaccommodating and sought to harass Plaintiff by telling her she could leave at any time, rather then professionally, timely and respectfully correcting the conditions that existed in the apartment.  Instead they jumped on one unfortunate incident [a fire caused by another resident] to retaliate, and harass Plaintiff for requesting repairs to her  Apartment.

67. Plaintiff's daughter had the apartment clothes picked up and containers Defendants were complaining about [that were not located in places Plaintiff requested work] moved.  Defendants still did not honor repair requests after January 15th, 2015 re-inspection by Inspectors.  The Apartment was no longer in violation.  **[reference PLAINTIFF EXHIBIT C]**.  Plaintiff is disabled and the terms and conditions Defendants had agreed to perform, were not timely being adhered/responded to, especially after January 15th, 2015.

68. Plaintiff filed complaint against the Inspectors for their assessment of her apartment having litter, garbage, trash.  Plaintiff got no response from MCHR on this issue.  Plaintiff had excessive clothing, toys, books, and most things she had were in storage bins set against the dining room wall.  Plaintiff had not asked Defendants to do any work in dining room where these storage containers sat..  Their complaints are pre-textual to preclude being found flagrantly in violation of the law.  The ceiling fan they finally put up was

installed after January 15,2015 clean up. So there was no issue for
Defendants to complain about except to create harassment for Plaintiff.

69. Plaintiff 's daughter had started clean up of Apartment in December 2014,
before she returned to Springfield. Plaintiff cannot do heavy lifting. The
contractor hired, installed upper clothes rack in closet, finished hanging up
clothes and put toys, clothes, books items in back into storage containers and
bin. Plaintiff had requested accommodations by asking Defendants to install
an upper rack for hanging clothes in 2014. Defendants refused.

70. Defendants were not correcting fire issues timely, or honoring commitments
to resurface kitchen cabinets, take out moldy kitchen sink base, cabinets and
counter top area, fix bedroom closet doors, repair holes in window ledges
where new storm windows had been installed a few years ago, correct
conditions on Patio [holes wood porch and light fixture not working and
broke], install dining room ceiling fan, replace light fixture in kitchen that was
issued broken to Plaintiff. Paint hallway and side of wall affected by fire].
The contractor finished his work by January 14, 2015. Defendants are in
violation of the law. Failure to accommodate. Falsification of information to
Investigator to preclude a decision adverse to Hathaway Village Partners LLC
and Hathaway Village property manager, Davis and Anthony Irving,
maintenance technician.

71. Defendant Hawkins issued Plaintiff a December 24, 2014 memo, sometime in
January 2015 stating Plaintiff had to have the one and only item on her patio
removed immediately or she would be fined $1000. Plaintiff could not find
the key to unchain the mountain bike and a locksmith was called [$60.00].
Defendants state they had to power wash the balconies. Plaintiff complied.
However, Plaintiff's balcony was never power washed. The cobwebs and bird
drippings were obvious signs that Defendants treated Plaintiff different even
when she did as requested by them. More harassment and false allegations of
storage maintained on balcony, which depresses Plaintiff.

72. Plaintiff turned in her rent check to Corporate office to bring attention to the negligence of the property managers regarding fire and apartment repair issues. Corporate did not contact Plaintiff. They misplaced or destroyed check. Mary called on approximately March 23,2015 informing Plaintiff of the late fee assessment, claiming she did not receive a rent check for March. Mary Hawkins extorted money from Plaintiff. When rent is not received by the 5th of the month, Property managers place notices on the resident's door informing them of immediate $50 late fee now added to current rent and that there is a $5 dollar day late charge assessed for each day thereafter and if no rent received by 15th of month your file is going to the Attorney for collections. Plaintiff did not get a notice on door that rent check not received by Mary from Corporate. Plaintiff did not get notice from attorney that she was in collection. Just a call from Mary days after appropriate terms and conditions were not applied by Defendants to Plaintiff , demanding money. The late fee was paid. Plaintiff wants this money to be returned. It was illegally and improperly demanded.

73. One of the Office personnel belittled Plaintiff by humming the twilight theme song on the phone when Plaintiff's caller ID number showed up on the phone. Plaintiff hung up the phone. This was in 2015. This is one of the reasons Plaintiff has persisted in the filing of this lawsuit. Defendants are very condescending in how they treat and respond to Plaintiff. This is blatant discrimination. Defendants believe that Plaintiff will have no witness to their harassment because she lives alone. Whne she makes calls to them, there is no one to witness this, so they say and do what they want, at will to her. This is harassment thus is blatant violation of ADA. Defendant Davis daughter is the leasing consultant and the persons whose duty it is to answer the leasing office telephone.

74. Defendants would ask Plaintiff for a prospective date to have a walkthrough in 2015, then, they would argue with Plaintiff that the date didn't suit them.

Then they state Plaintiff is denying them access.  Plaintiff is medically sick.
Defendant's refused to accommodate Plaintiff.  They turned any contact with
Plaintiff into a confrontation.  This is harassment.

75. The Lease Contract **[PLAINTIFF EXHIBIT E]** states on page 4 of 7
#23 **REPAIRS AND WORK ORDERS**.  If you or any occupant needs to
send a notice or request (for repairs, installations, services, or security related
matters) it must be in writing to our designated representative (except in case
of fire, smoke, gas, explosion, overflowing sewage,  uncontrollable running
water, electrical shorts or crime in progress)  Our written notes on your oral
requests do not constitute a written request from you.    **Does not waive the
strict requirement for written notices under the Lease Contract.** Plaintiff
wrote her requests for repairs but was ignored.  The Defendants use a one
time incident to further harass and demean plaintiff.  Plaintiff is sickly and
Defendants only wanted to make her sicker.  Defendants failed to
accommodate and then harassed Plaintiff [Defendant's handicap witnesses
were treated better than Plaintiff, they testified to being timely
accommodated, their requests for maintenance were responded to
immediately].

76. In an August 12, 2013 letter from Ms. Davis **[PLAINTIFF EXHIBIT F]**
requested that from now on….**to avoid future miscommunication, I would
like to ask that you submit any work order request in writing through the
end of your lease, May 2014 to the leasing office and/or leave a voicemail
for our records that will allow us to address your concerns promptly.**
Plaintiff's Concerns were put in writing.  Concerns were not promptly
responded to.  The responses that they could not access apartment due to
boxes is Pre-textual to preclude being found in flagrant violation of the law.
The kitchen and bathroom have never had boxes stored in them.

77. The above letter came about because Plaintiff informed Tierra the leasing
consultant in 2013 that she had no hot water.  Plaintiff's daughter was home

and voiced this out loud to Plaintiff as a reminder.  Plaintiff put notes on rent checks [money orders] to management about the water situation. Management did not respond until plaintiff called Housing Authority and HUD.  In the letter of May 2014 Ms Davis insisted on taunting Plaintiff with written correspondence still asking questions about the hot water situation. Plaintiff was constantly requesting someone to come to the Apt and remedy this issue.  Management was negligent and then condescending when finally responding.  Plaintiff requested abatement of rent from May 30, 2013, until August 13, 2013.

78. There has not been anything on balcony since December 2014 [mountain bike immediately removed when threatened with $1,000. fine, although others balconies contain items not patio related].  However the boards on porch still have the holes in them [reported since 2009].  Defendants statements that they are denied access is pre-textual, collaborated and conspired to preclude being found guilty of flagrantly violating the ADA and harassment of Plaintiff.

79. Discrimination is defined as different treatment which makes a distinction of one person or a group of people from others, either intentionally, by neglect or by actions or lack of actions towards a protected class.  Plaintiff was treated differently.  Plaintiff is a member of several protected classes [disabled, age over 40, African American, and Female].

## COUNT IV- DEFENDANTS STATEMENTS ARE
## SLANDEROUS AND LIBELOUS

COMES now Plaintiff, stating as follows, Count III of her Complaint against the Defendants.

**80**.  Plaintiff hereby, incorporates by reference, as if fully set out herein, the allegations, asserted in Paragraphs 1-79.

**81**. Defendants state that Plaintiff denied them access. This is a lie. Defendants failed to make appointments by not responding to Plaintiff when she wrote her requests for work orders [as stated in the LEASE CONTRACT]. Hence No set appointments were made until HUD and MCHR were contacted 2013 and 2015.

**82**. Defendants have a key and come to Plaintiffs apartment when she leaves. Their statements of being denied access are a lie. They are pre-textual, collaborated, and conspired so, as not to be found guilty of flagrant violations of the law.

**83**. Defendants state that Plaintiff had boxes stacked from the floor to the ceiling. This is a lie. Plaintiff has a degenerative spine. She barely carries her own weight and thusly would/could not pack/stack boxes to the ceiling. A contractor was hired to bend, pick up, hang, install, take out, do the chores that Plaintiff cannot accomplish any longer. Contractor stacked plastic Sterilite storage containers in the storage bin, as directed by Preservation Inspectors. Defendants provided no pictures to Plaintiff showing floor to ceiling boxes ever. Plaintiff requested the pictures, they are not in the files she received from MCHR, Jefferson City office. Inspectors stated for Plaintiff to put all items in her storage unit, the contractor did. Plaintiff never had floor to ceiling boxes in the kitchen, bathroom, master bedroom, second bedroom, family room, dining room, or hallways, Plaintiff has never had floor to ceiling stacked boxes. Defendants are not denied access, they access the Apartment when Plaintiff is not there and when, they shouldn't be in the Apartment she rents. This is a blatant lie. This is slander and libel **[PLAINTIFFF EXHIBIT G]**

**84**. Defendants state that Plaintiff constantly cancels appointments. From 2009 – 2015 Defendants made no appointments for Plaintiff to cancel. The repair requests have been few to none for past years. When Plaintiff requested work orders, there was no response from Defendants so Plaintiff took to writing notes on the rent checks and money orders of hers they were regularly cashing. WHAT APPOINTMENTS WERE CANCELLED or RESCHEDULED 2009-2015.

22

**85**. After MCHR became involved Plaintiff informed Defendant Davis on the one occasion she and one of the owners wanted access to the Apartment, that she wanted the investigator present.  As soon as the investigator gives an ok to date and time, IT IS A GO.   This was not denying them access. This was adhering to investigative processes and procedures.  Hence, their statements are a lie.  They are conspired, pre-textual, and collaborated.  When the facts of the matter are applied, they have lied.

**86**. Defendant states after the fire they attempted to address Plaintiffs concerns. This is a lie.  Plaintiff's daughter informed Mary via email that her mother wants to know when do they plan to start correcting the issues in the Apartment. **MARY HAWKINS STATED TO PLAINTIFF SHE COULD NOT DO ANY MORE THAN WHAT MS DAVIS AND THE OWNERS ALLOWED HER TO DO**.  Defendant Davis ignored Plaintiff until she filed with the MCHR.  Once Defendants got a violation issued against Plaintiff they didn't care to correct the issues in the apartment.  Although Plaintiff had corrected what the inspectors wanted her to pick up [which was not garbage, rubbish, trash].  The contractor hired to help Plaintiff, picked up toys, magazines, clothes, shoes, legal papers, recyclable grocery bags, but everything was in a container already, except for the shoes and clothes.  The contractor was able to lift and stack containers neatly in the storage bin area. Plaintiff is physically unable to do these things anymore.

**87**. Defendants state they could not make repairs because Plaintiffs belongings blocking access.  There are/were no belongings in the kitchen.  All they had to do was state a date and time they wanted to do the work,.  They never did,.  There are/were no belongings [mop bucket and mop] in the bathroom.  All they had to do was state a date and time they wanted to do the work.  They never did.  There was nothing on the balcony after the notice to fine Plaintiff for one mountain bike [December 2014].  That one mountain bike did not impede Defendants from fixing the light fixture or boards.  All they had to do was state a date and time they wanted to do the work.  They never did.  This is applicable for the other situations

that required workmanship in the apartment.  The statements are slanderous and libelous.   They are pre-textual, collaborated, and conspired to preclude being flagrantly in violation of the law.

**88**. Anthony Irving states that Plaintiff cleaned out her kitchen enough for us to make repairs.  The kitchen was already clean.  The bathroom and kitchen are the two places there was no negative remarks made by the Preservation Inspectors.  They always had access, no boxes/containers.  Irving goes on to state Plaintiff said she was satisfied and did not request any other repairs.  This is a lie.  An entire written letter was given to Mary Hawkins regarding the kitchen repair issues, as subsequently filed with the MCHR and HUD [**PLAINTIFF EXHIBIT H**].  Defendants responses are libelous and slanderous.

**89**. Irving would not install a rod in Plaintiff's closet so that she could have had clothes hung up by her daughter.  Plaintiff's request for this accommodation in 2014 walkthrough was denied.  Irving's statement he would be happy to install bathroom accessories for Plaintiff after she purchased them,  is a blatant lie.  Irving further adds insult by stating he sees Plaintiff most mornings.  They say good morning to each other.  He often takes complainants trash out for her.  These are all blatant lies.  Plaintiff has severe insomnia.  She is never out or up early that's why these people cannot get into the apartment in the early morning [its medical and disability issues].  Plaintiff can not be in her sleeping attire, and Defendants in the apartment doing work.  Plaintiff has to be able to get up.  Plaintiff has severe insomnia.  Anthony Irving does not see Plaintiff in the mornings [Plaintiff takes out her trash daily, this is true,  but always in the afternoon/late evenings] and Plaintiff does not see Mr. Irving or pass pleasantries with him.   He does not take out Plaintiff's trash,  Irving's statements are slanderous and libelous.  They are offered as a means to avoid being flagrantly found guilty of the law and neglect of his duties.  He is a liar and these statements are not true. **Plaintiff is not a hoarder and Irving's statement that she takes her trash out daily supports what Plaintiff is telling the court.  This was a one**

time incident, due to Plaintiff's failing health, and because of someone else's fire and negligence, Plaintiff's apartment had to be accessed.  Defendants jumped on opportunity to railroad plaintiff because she had called HUD on them in 2013 for not fixing her hot water heater in a timely manner.  **All requested repairs in the apartment are still not completed.**  They are the same issues since 2009 - 2014.

90. HUD states if this complaint involves eviction or foreclosure, MCHR and HUD request you stay any such proceeding pending the completion of their investigation.  **Defendant Davis has threatened Plaintiff with eviction prior to the end of investigation.  [PLAINTIFF EXHIBIT I ].  The statements made by Defendants are slanderous and libelous in order not to be found guilty of the law.  They have conspired and collaborated their responses.  Requested repairs are still awaiting completion and Defendants are the reason for delay, not plaintiff.**

91. Plaintiff did inform leasing consultant Tierra that she did not have hot water, Plaintiff's daughter was there and called out to her mother as a reminder to tell Tierra [Plaintiff's daughter will be a witness to this issue].  Valerie Davis statements on this issue are pre-textual to avoid being found guilty of failing to timely respond to a disabled tenant.  Plaintiff has requested discovery of phone records, these Defendants are lying.  There was no contact made to rectify the hot water issue until Plaintiff called HUD [Fair Housing].  **The nexus here is that when Plaintiff files or calls a governing body that can penalize the Defendants they respond to her requests.  Then they collaborate by stating they were denied access.  Plaintiff is medically ill.  You have to establish a date you want to come and a time.  Defendants have not done this and have lied in their responses.  The lies are slanderous and libelous.**

92. Valerie Davis states to investigator May 2011 was her first time entering Plaintiff's apartment.  She found out Plaintiff was a hoarder.  Ms Walton was given verbal notice that…..The kitchen sink was clogged……and tub full of ….I

25

called Anthony…………Her reply was that …….The conditions…….Due to her being on fixed income…….we decided to allow her to renew her lease. **Every statement here is an outright lie. Plaintiff's daughter came home weekly and the conditions of this apartment were never in the state Ms. Davis has indicated. <u>Plaintiff's daughter is a witness in this complaint.</u> Anthony is always the person Ms. Davis uses to collaborate her lies. Ms Davis is Anthony's boss. Ms. Davis would have called Preservation in 2011 if that was the case. She would have called Preservation in 2012, 2013, and 2014. She didn't because what she states is a bold-faced lie. Defendant's statements are slanderous and libelous. Had there been any issues as she stated she would have called Preservation as she did in 2015. Ms. Davis should provide her 2011-2014 pictures. This was a one-time incident due to Plaintiff's failing health. At no time has plaintiff ever had the water situation described by Ms. Davis occurring in her sinks be it kitchen or bathroom or toilet.**

## COUNT V- VIOLATED PLAINTIFF'S FIRST, AND FOURTEENTH AMENDMENT RIGHTS

COMES now Plaintiff, stating as follows, Count V of her complaint against the Defendants.

**93.** Plaintiff hereby incorporates by reference, as if fully set out herein, the Allegations, asserted in Paragraphs 1-92

**94**. Defendants actions and omissions as outlined above deprived Plaintiff of her constitutional rights under Federal law.

**95**. Defendants violated First Amendment Rights by abridging Plaintiff's freedom of speech regarding the terms and conditions of her Lease Contract and the right to professional, timely upkeep and repair of the apartment she rented from Defendants.

**96**. Defendants further abridged Plaintiff's freedom of speech regarding her rights to verbalize conditions that were not repaired or improperly repaired in the apartment she

rented from Defendants. Property Mgr Davis informed Plaintiff via voice mail messaging that her Lease was going to be terminated.  Plaintiff had filed MCHR and HUD complaints and complained to corporate management about the apartment repairs.

**97.** Defendants violated Fourteenth Amendment rights of Plaintiff.  The actions and omissions  of Defendants as outlined above deprived Plaintiff of her vested Property rights and interest of residency without Due Process of Law [misconstrued, slanderous, libelous and threatening statements document investigative file of HUD/MCHR].

## COUNT VI- PLAINTIFF ESTABLISHED CAUSAL, PLAUSIBLE, AND NEXUS CONNECTIONS TO DEFENDANTS INVESTIGATION STATEMENTS

COMES now Plaintiff, stating as follows, Count VI of her complaint against the Defendants.

**98**. Plaintiff hereby incorporates by reference, as if fully set out herein, the Allegations asserted in Paragraphs 1-96.

**99.** Plaintiff is certified disable since 1990.  The Defendants never asked Plaintiff what is her disability [Defendants statements establish a nexus, they didn't care about the disability which is consistent with Plaintiff's allegations of failure to accommodate].  The resident file should list Plaintiff's declared disability.

**100**. On January 5, 2015 when the inspectors were sent to Plaintiff's apartment.  It was messier than Dec24/25th, 2014 fire incident because Plaintiff's daughter had pulled boxes from bedroom to front room area, leaving for the contractor to move, and Plaintiff was throwing away clothes, toys, shoes, books, and they were in bags in front room area for the contractor to move.  There was never any boxes stacked from floor to ceiling.  There was no garbage, litter, rubbish. Plaintiff can not do the long term standing, bending, kneeling, or household duties she once did.  Plaintiff has chronic osteoarthritis, carpal tunnel syndrome, multiple sclerosis, diabetes, and onset of spinal degeneration.  The house was messy January 2015 is Plausible and why there were trash bags on January 5, 2015 is understandable.  Plaintiff was waiting for contractor.  Plaintiff's daughter made a

decision that is hard for her mother.  Part with any clothes item you have not worn over past 5 years.  Plaintiff is not a hoarder but a shopaholic and she has the credit cards and tags still attached to clothes to prove her issue.  Plaintiff has sign on her Apartment door telling UPS and FEDEX not to leave packages on her doorstep.  Plaintiff's shopping exceeds the apartment closet spaces.  The contractor can attest to this.  This is another reason Plaintiff was guarded about People being in her Apartment when she is not there. She doesn't know what clothes have been removed from her premises for all the entries that have been made to her apartment when she was not home.  Defendants have a key and enter at will. In Plaintiff's opinion these people have been shopping in her apartment at her expense.

**101.** Plaintiff has been victimized and ignored at this complex;  Plaintiff requested Defendants to check her stove for gas oder [Plaintiff's sense of smell has been compromised due to surgery].  They did not.  A White female neighbor complained of smelling gas, and Laclede Gas Co was called. The leak was traced to Plaintiff's apartment [there is gross negligence in the maintenance of Plaintiff's apartment]; clothing packages left on door step have been stolen; Plaintiff's car stolen off complex parking lot [friends of tenants]; Maintenance personnel drank juice from Plaintiff's refrigerator leaving cup on counter [plaintiff did report this]; Maintenance have drank JOSE CUERVO liquor from Plaintiff's Baker's Rack display [the bottle is empty now. Plaintiff retired this bottle in 1998] [reported to Mary Hawkins, property manager], [this liquor was drank by someone entering Plaintiff's Apt in 2015.  Plaintiff does not drink liquor.]; Maintenance has accessed Plaintiff's refrigerator and left tools and trash in the freezer [this was reported and monetary refund was paid to Plaintiff {refrigerator food was pitched}]; Car broken into for second time {due to bar on steering wheel it was not stolen again} on complex property; Plaintiff's Dodge Caravan steering column was broken by vandals at this Complex and was subsequently towed off lot by Hathaway Village Apt managers; New Shoes in daughter's bedroom, still in box was stolen; Princess doll set with corresponding books stolen; invasion privacy Plaintiff called Police on perpetrator [Anthony Irving] no report filed because St. Louis county Police

Department do not get involved in Landlord Tenant issues [Anthony was employed by Hathaway Village Apartments]; Several neighbors inquired if Plaintiff was getting work done on Apt, when Plaintiff stated No, she was informed that they see maintenance going in her Apartment and wanted her to know [Plaintiff inquired of this intrusion and was told no one had been in her Apt by Ms. Davis because they had no work orders for her]. Plaintiff has a box stored in her closet since 2006, someone poked hole in box trying to find out what is in it. This is another invasion of Plaintiff's privacy and illegal intrusion into her rented residency. Plaintiff has tangible and Plausible situations which have caused her Not to want anyone in her Apartment without her being there, Plaintiff has lots of prescription medications she does not want compromised by persons unknown to her. Plaintiff's front door has marks of someone attempting to break in [these Apt were painted on the outside as stated by Valerie Davis, Plaintiff's door has scratches and marks at lock entrée and door knob areas which has occurred since painted].

**102.**Plaintiff has severe insomnia [Sleep Deprivation occurs from inability to sleep all, some or through out the night causing Plaintiff not to have the ability to rise/awake in the morning affecting her a.m. life activities] This is one issue of Plaintiff's disability. Defendant Irving accessed Plaintiff's apartment in the morning, while she was sleeping in her underwear on her couch. This is trespassing. This is abuse of authority in the administration of his duties as a maintenance technician for this complex. Plaintiff's car was parked outside the building. Defendant's have never stated why thy were coming to Apartment and what was the urgency. This is harassment.

**103.**Plaintiff did not cancel scheduled appointments unless she had plausible reasons. Defendants have failed to list the dates and times of these so called scheduled appointments and for which work order. **Defendants were allowed to make blanketed unsupported statements for all and any work order or request.**

**104.**Defendant Davis states in 03/2011 she first entered the apartment of Plaintiff and evidenced statement reference at Count IV , #92. Defendants submitted a list of work orders completed on Plaintiff's Apartment. However for 2011 there are no work orders, emails submitted, Preservation reports to support Defendants horrific statements

**[PLAINTIFF EXHIBIT J].  Defendant's daughter has been cosigner on lease since 18 years old.  Defendant's failed to notify cosigner [who has shown to take immediate corrective action for any issue occurring at the apartment be it just a request of her mother or landlord request].**

105.Plaintiff reported severe water damage starting 2009 at this complex [refer to Plaintiff Exhibit B.  Valerie Davis states she commenced work at this specific property of Hathaway Village Partners, LLC in 2010 [indicating she was managing other properties for owners].  Plaintiff's maintenance issues at this point were responded to timely until Ms Davis assumed Property management position at Hathaway Village complex.

106.Plaintiff was communicating with Mary Hawkins, Property Manager during this 2014-2015 year pertaining to maintenance repairs, and not Ms Davis **[PLAINTIFF EXHIBIT K].**  Ms. Hawkins informed Plaintiff that she could not do any more than what Ms. Davis and the owners allowed her to do.  Defendants failed to reproduce witness and ex employee Hawkins instead used Ms Davis to collaborate, conspire patented and orchestrated statements to investigator.

107.Plaintiff rescheduled the December 2015 resurfacing and painting  for <u>PLAUSIBLE reasons</u> **[PLAINTIFF EXHIBIT L ]**.  There was no set appointment established by Plaintiff or Defendant for this work order [as has been the case of past situations of some maintenance requests or work orders] it was a tentative date.  Plaintiff gave correspondence letter to new Property Manager Rivera **[PLAINTIFF EXHIBIT M ]** stating January 22, 2016 might work.  Again there was no set date established just a tentative time slot.  Plaintiff, in writing is informing Defendant why she cannot go forward with this date **[PLAINTIFF EXHIBIT N]**.  Plaintiff established another date.  Management did not respond to Plaintiff's letter dated 1/18/2016 until 02/04/2016 informing Plaintiff by phone that the February 5, 2016 date is not feasible for them.  Defendant's rescheduled date to February 12, 2016 for painting and resurfacing.  The painting occurred and not without a problem [and not of Plaintiff's making] reference COUNT I  # 33.  Defendant new property manager cancelled the resurfacing informing Plaintiff that the counter tops too damaged and old, not cost effective and the mismatched

cabinets were an eyesore and the cabinets she had, came with building and needed replacing. On February 12, 2016 new mgr cancelled resurfacing and informed Plaintiff new cabinets are ordered, it will take two weeks to make them [February 26, 2016]; when they are finished she will call Plaintiff and they can determine an installation date.

**108**.THIS WORK ORDER SITUATION IS AN EXAMPLE OF WHAT HAS HAPPENED IN PAST SITUATIONS OF WORK ORDERS or MAINTENANCE REQUESTS, AND NOT ALL WORK ORDERS/REQUESTS **[PLAINTIFF EXHIBIT O]**. PLAINTIFF'S REASONS FOR CANCELING ARE ALWAYS PLAUSIBLE AND MEDICAL RELATED, NEVER FRIVOLOUS [JUST TO DENY DEFENDANTS ENTRY]. DEFENDANTS HAVE FAILED TO ACCOMMODATE OR RESPECT PLAINTIFF'S MEDICAL RIGHTS. PLAINTIFF'S HEALTH IS FRAGILE. THERE IS AND HAS ALWAYS BEEN A CAUSAL CONNECTION TO THE CANCELLATIONS OR RESCHEDULES. THESE CANCELLATION AND RESCHEDULES HAVE NOT ALWAYS BEEN BECAUSE OF PLAINTIFF, BUT RATHER DEFENDANTS.

**109**.THERE IS A NEXUS ESTABLISHED OF DEFENDANTS TESTIMONY BEING COLLABORATED AND CONSPIRED TO CREATE A BASIS FOR REMOVAL USING ONE SITUATION OF PLAINTIFF'S APT IN DISARRAY [DUE TO PLAINTIFF'S DETERIORATING HEALTH] TO REMOVE HER FROM THEIR PROPERTY AND TO CREATE A HOARDING PRIMA FACIE CASE AGAINST PLAINTIFF. WHEN PLAINTIFF INVOLVED HUD/MCHR, DEFENDANTS LABELED PLAINTIFF A HOARDER [**DEFAMATION OF CHARACTER**]. PLAINTIFF HAS PASSED YEARLY INSPECTIONS ANNOUNCED AND UNANNOUNCED AT HATHAWAY VILLAGE APARTMENTS SINCE 2002 [**PLAINTIFF EXHIBIT P**]. MANY OF THESE INSPECTIONS APPROVED BY DAVIS, WHO HAS BEEN ONSITE PROPERTY MANAGER SINCE 2010. 2013, INSPECTION CONDUCTED BY TIERRA [PRIOR LEASING CONSULTANT {PLAINTIFF'S DAUGHTER ON PREMISE FOR THAT INSPECTION]. 2014 INSPECTION CONDUCTED BY DAVIS. 2015, INSPECTION CONDUCTED BY

HAWKINS [PRIOR PROPERTY MGR]. WHEN PLAINTIFF INVOLVED HUD/
MCHR IN HER MAINTENANCE REQUESTED REPAIRS FOR 2014 -2015 SHE
BECAME A HOARDER . THE PRESERVATION INSPECTORS DID NOT WRITE
ON THEIR REPORT THAT A HOARDING SITUATION EXISTED IN THIS
APARTMENT [2015]. NO HUD OR HOUSING AUTHORITY INSPECTOR HAD
EVER BEEN SENT TO PLAINTIFF'S APT FROM 2002-2014 BY DEFENDANTS.

## COUNT VII- PLAINTIFF DEMANDS A JURY TRIAL

COMES now Plaintiff, stating as follows, Count VII of her complaint against the
Defendants.

110.Plaintiff hereby incorporates by reference, as if fully set out herein, the allegations
asserted in paragraphs 1-108

111.Plaintiff has timely raised her complaints of discrimination and nondiscrimination
with the MCHR and HUD.**[PLAINTIFF EXHIBIT Q] [PLAINTIFF EXHIBIT R]
[PLAINTIFF EXHIBIT S] [ PLAINTIFF EXHIBIT T ] [PLAINTIFF EXHIBIT U ]**

112.All complaints are hereby incorporated by reference as if fully set out herein. This
court has jurisdiction over all such claims /causes pursuant to Missouri Revised Statute
536.150, U.S. Constitution, Aid to Disability Act, and any and all other applicable
statutes and laws.

113.As a result of Defendants conduct, which is in violation of the above stated laws and
statutes. Plaintiff has suffered severe anxiety, aggravation of plaintiff's ongoing medical
issues due to the unnecessary stress imposed on Plaintiff.

114.Plaintiff was never asked about a settlement offer during the course of this
investigation. Plaintiff would have put her settlement offer demands in writing. The case
just closed and a determination was issued.

115.Plaintiff demands a jury trial.

WHEREFORE, Plaintiff prays that judgment be granted in her favor on Count I, Count II, Count III, Count IV, Count V, Count VI and Count VII against Defendants and that she be awarded compensatory and punitive damages [$300,000] including but not limited to financial compensation for mental anguish, pain and suffering and any medical treatment necessitated or required because of Defendant's unlawful actions, out of pocket expenses, mailing, postage, and attorney and filing/legal fees; AND for any and all other forms of relief this court deems just and proper.

**NOTARY** *Carol J Burton*

CAROL J. BURTON
Notary Public-Notary Seal
State of Missouri, Greene County
Commission # 12553804
My Commission Expires May 21, 2016

**Respectfully,**

*Darrie Walton 2/23/16*

Darrie Walton
11490 LaTonka Trail Apt D
Florissant, MO 63033
314-741-6521

## CERTIFICATE OF SERVICE

The undersigned Plaintiff, PRO SE, Darrie Walton, has caused the attached Petitions/

Motions to the Court [**Judicial Review of MCHR and HUD December 1, 2015**

**Decision; and Request for Enlargement of time to Perfect Pleadings/Petition and**

**Obtain an Attorney** ] to be filed _____ 2/25/16 _____

By: P.O. Certification to;

Hathaway Village Partners, LLC
77551 Carondelet Ave. #800
St. Louis, Mo. 63105

February 29, 2016 to
Sheriff Department Process Server
for Delivery to:
Hathaway Village Partners, LLC
77551 Carondelet Ave. #800
St. Louis, Mo. 63105

Clerk of the Court
United States District Court
Eastern District of Missouri
111 S Tenth Street Suite 3.300
St. Louis, Mo 63102

Anita Chimento
Hathaway Village Partners, LLC
77591 Carondelet Ave. #800
St. Louis, Mo. 63105

NOTARY *Carol J Burton*

Valerie Davis, Property Manager
Hathaway Village Apartments
11466 Latonka Trail Apt C
Florissant, Mo. 63033

```
CAROL J. BURTON
Notary Public-Notary Seal
State of Missouri, Greene County
Commission # 12553804
My Commission Expires May 21, 2016
```

Mary Hawkins, Property Manager
Hathaway Village Apartments
11466 Latonka Trail Apt C
Florissant, Mo. 63033

Anthony Irving, Maintenance Technician
Hathaway Village Apartments
11466 Latonka Trail Apt C
Florissant, Mo 63033

34

Respectfully,

Darrie Walton, PRO SE
11490 Latonka Trail Apartment D
Florissant, Mo.  63033
314-741-6521